# The New York, Lake Erie & Western R. R. Co. *versus* Bell.

1. Employees under the same master, engaged in the same common work, and performing duties and services for the same general purposes, are fellow servants. The rule is the same, although the one injured may be inferior in grade, and is subject to the control and direction of the superior whose act causes the injury, provided they are both co-operating to effect the same common object.

2. Lehigh Valley Coal Co. v. Jones, 86 Pa. St., 432, followed.

3. It is only when the master or superior places the entire charge of his business, or a distinct branch of it, in the hands of an agent or subordinate, exercising no discretion or oversight of his own, that the master is held liable for the negligence of such agent or subordinate.

4. A railroad company, to operate its shops, foundry, hammer shop, paint shop, and general machine shops, employed a master mechanic, with power to employ and discharge workmen; under him was a general foreman: each shop had its foreman, and under the shop foreman were gang foremen. A. belonged to a gang whose business it was to bring into the shops the supplies on cars, and to take out the manufactured articles. B., the foundry foreman, obtained permission from C., the master mechanic, to convey a gas pipe from one shop to another, over a railroad track, used by the gang to which A. belonged, which separated the two shops. D., a member of one of the gangs under B., put up the pipe so low that in passing under it on a car, A. was struck and injured. In an action by A. against the company, to recover damages for the injury thus sustained, *Held*, that A. and D. were fellow servants, and that A. could not recover for the negligence of D. in putting up the gas pipe by which he was injured.

March 18th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to Court of Common Pleas, of *Susquehanna county:* Of January Term, No. 208.

[New York, Lake Erie & West. R. R. Co. v. Bell.]

Trespass on the case by Albert Bell against the New York, Lake Erie and Western Railroad Company to recover damages for injuries sustained by being struck by an obstruction, a gas pipe, carelessly and negligently carried over a railroad track by the defendant, over which track it was the duty of the plaintiff to pass in the performance of his duty. Plea, Not guilty.

The following are the facts as they appeared on the trial before McCollum, P. J.:

The New York, Lake Erie and Western Railroad Company are a corporation organized under the laws of the state of New York, and are the successors of the Erie Railway Company. Their railroad passes through the county of Susquehanna, and they have at the borough of Susquehanna, large shops for the repair and manufacture of locomotives, cars, switches, castings, frogs, and other supplies which are used upon the various divisions of the road. Susquehanna being the terminus between the Susquehanna division on the west, and the Delaware division on the east, large numbers of cars of all descriptions accumulate, and are made up into trains necessitating a large number of parallel tracks in the yard.

The shops of the company are not all under one roof, but the foundry, hammer shop, and paint shop are separate from the main machine shop, as it is called, which is some 700 feet long.

Between the foundry and paint shop, and machine shop, a track is laid for the purpose of bringing in material and supplies to the various shops from the main track, and for carrying out the castings, cars, locomotives, and repaired and manufactured articles upon the main track, for distribution over the road.

There is also a scale upon this track upon which locomotives are run on to be weighed.

All these shops, and the men employed therein, and on this foundry track, were under the general charge of V. Blackburn, who is known as the master mechanic, and under him was a general foreman, J. Hawthorne.

The master mechanic has the sole power of employing and discharging men at these shops, but this power he delegated to the general foreman, who frequently exercised it. There were about 800 men employed in and about these shops—and they worked under the immediate charge of foremen and bosses.

O. D. Falkenbury was foreman of the foundry, Mr. Leal of the paint shop. C. O. Vedder was gang foreman of the turning department, and had charge of making rods and links, and of gas and steam pipe and fitting.

2 Amerman—26

M. H. Pope had charge as a boss of a gang of men whose business it was to bring in any cars loaded with materials and supplies for the shops from the main track, take them into the paint shop, foundry, and other shops, and unload them there, and to load any manufactured articles or supplies from the shops into cars for distribution along the road. For this purpose this foundry track was used. It was not used for the general transportation business of the road.

The men in Pope's gang were an engineer and fireman, who were upon a switching engine used only for this purpose: two switchmen, of whom the plaintiff was one; a number of laborers, who performed the work of loading and unloading the cars.

O. D. Falkenbury, who was foreman of the foundry, applied to the master mechanic for leave to have a gas pipe run from the paint shop to the foundry so as to furnish light to inspect the cores of some particular castings made there. It being then winter, and the ground frozen, so that the trench to convey the pipe underground could not conveniently be dug, he was directed to wait until the spring, when the ground would be thawed out. In June he went to Mr. Hawthorne and received permission to have Vedder do it.

Instead of having a trench dug and conveying the pipe under ground, O'Dea, who was one of the gasfitters, ran the pipe across this foundry track, sixteen feet and three inches above the rail. This was done on the 29th of June, 1881, and the same afternoon, about 4 o'clock, before Hawthorne or Blackburn knew that the pipe had been put across over the track instead of under it, the plaintiff, in standing on a car which was being run into the shop, was hit by the pipe across his shoulders. He was not injured, but caught hold of it and tried to pull it down. He then went to Pope and told him of it, and Pope said he would see Hawthorne about it. Plaintiff says he said he would have it taken down. The pipe was of such a height as not to hit a man sitting on the cars or if he stooped about a foot or so.

The plaintiff went to work the next morning after he had been hit by the pipe, and in passing along on this track standing on a box car, with his back to the pipe, he was knocked off the car and sustained severe injuries, for which this suit is brought. He could have seen the other switchman just as well if he had been sitting, as if standing on the car.

The defendant claimed on the trial:

*First.* That the plaintiff, and all the men employed in and about these shops, being, and engaged in a common employment under the same general foreman and master mechanic,

were fellow servants, and that for the negligent acts of any one, the other could not recover.

*Second.* That plaintiff having knowledge that the pipe was there the night before he was injured, was bound to look out for it the next morning; that a failure to do so was such utter recklessness, that the court was bound to pronounce it contributory negligence.

*Third.* That the fact that plaintiff told Pope, who was simply his immediate gang boss, of it, even if Pope did say he would have it taken down, was no excuse for such failure to look out for the pipe before passing under it.

The defendant presented, *inter alia,* the following points:

5. "That the men employed in the shops of the defendant, and the men employed in the shop yard, to take in and out cars loaded with supplies for use in the shops, and to load and unload them, all being under one common foreman, are fellow-servants, and for the negligent acts of any one of them, not communicated to the general foreman, no recovery can be had."

Ans. We decline to affirm this point. It calls upon us to say in substance, as respects the questions here, and the acts under investigation, that Bell, and O'Dea, and Vedder were fellow servants and co-laborers, and that we decline to do. (Fifth assignment of error.)

6. "That the plaintiff having testified that the injury was caused by a gas pipe crossing from the paint shop to the foundry, and having shown by his own evidence that the same was put up by O'Dea, under the directions of Vedder, the foreman of the rod department, such act was the act of a co-employee, and if negligently done, no recovery can be had therefor by the plaintiff."

Ans. This point is refused. (Sixth assignment of error.)

. The plaintiff presented, *inter alia,* the following point:

2. "If the jury believe that the gas pipe was put up just as sworn to by the plaintiff, on the 29th day of June, 1881, by O'Dea, by direction or permission of V. Blackburn, the master mechanic, as testified to by him, then the defendant is responsible for the manner in which it was erected, whether a skillful workman was employed or not. For the defendants, in law, are deemed to be present, though not actually present. And if the gas pipe was so erected as to be unsafe and dangerous, or so as to render the place where the plaintiff worked unsafe and dangerous, then the defendants are, without further notice, guilty of negligence, and if the plaintiff was injured thereby he may recover for those injuries, unless the jury are satisfied from the evidence that the plaintiff was guilty of contributory negligence."

[New York, Lake Erie & West. R. R. Co. *v.* Bell.]

·Ans. We affirm this point. (Second assignment of error.)

Verdict for the plaintiff for the sum of $7,000, and thereupon judgment, whereupon the defendant took this writ, assigning for error, *inter alia*, the answer of the court to the plaintiff's and the defendant's points as above given.

*W. H. & H. C. Jessup*, for plaintiff in error.—"The question arises, who are fellow-servants in contemplation of law? To constitute such they need not at the time be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes. The rule is the same, although the one injured may be inferior in grade, and is subject to the control and direction of the superior, whose act caused the injury, provided they are both co-operating to effect the same common object. The true reason upon which, I think, this rule rests, is, that each one who enters the service of another, takes on himself all the ordinary risks of the employment in which he engages, and that the negligent acts of his fellow-workmen, in the general course of his employment, are within the ordinary risks: Lehigh Valley Coal Co. *v.* Jones, 86 Pa. St., 432. Omitting numerous cases which sustain the principle we have stated, we will content ourselves with citing Wilson *v.* Merry Eng. Law Rep., 1 H. L. Scotch Ca., 326; Hall *v.* Johnson, 34 L. J. Exch., 222; Morgan *v.* The Vale of Neath Railway Co., 35 L. J. Q. B., 23; Howells *v.* Landore Simons Steel Co., 10 Eng. Law Rep. (Q. B.), 62; Albro *v.* Canal Co., 6 Cush., 75; Gillshannon *v.* Stony Brook Railroad Co., 10 Id., 228; Gilman *v.* Eastern Railroad Co., 10 Allen, 233; Russell *v.* Hudson Railroad Co., 17 N. Y., 134; Boldt *v.* New York Central Railroad Co., 18 Id., 432; Wright *v.* Same, 25 Id., 562; Fort *v.* Railroad, 2 Dillon, 259; Chicago & A. Railroad *v.* Murphy, 53 Ill., 336·; Wonder *v.* B. & O. Railroad Co., 32d Md., 411; Ryan *v.* Cumberland Valley Railroad Co., 11 Harris, 384; Frazer *v.* Penn. Railroad Co., 2 Wright, 104; Caldwell *v.* Brown, 3 P. F. S., 453; Weger *v.* Penn. Railroad Co., 5 Id., 460; Ardesco Oil Co. *v.* Gibson, 13 Id., 146; Patterson *v.* Pitts. & Connells. Railroad Co., 26 Id., 389; Mullan *v.* Phila. & South. Mail Steamship Co., 28 Id., 25."

The following are cases where the negligence of the first named employee caused injury to the second, and no recovery was had on the ground of being co-employees:

*Blacksmith's Assistant—Blacksmith.* Melville *v.* Missouri River &c. R. Co., 4 McCrary, 194.

*Boiler Makers—Mechanic in repair shop.* Murphy v. Boston & Albany R. R. Co., 8 Am. & Eng. R. R. Cas., 510.

[New York, Lake Erie & West. R. R. Co. v. Bell.]

*Brake repairer—Brakeman.* Nashville &c. R. R. Co. *v.* Foster, 11 Am. & Eng. R. R. Cas., 180.

*Brakeman—Fellow Brakeman.* Chicago & A. R. R. *v.* Rush, 84 Ill., 570; Hayes *v.* Western R. R., 3 Cush., 270; Atchison, T. & S. F. R. Co. *v.* Plunkett, 2 Am. & Eng. R. R. Cas., 126.

*Brakeman—Laborer loading dirt on train.* Henry *v.* Staten Island R. Co., 2 Am. & Eng. R. R. Cas., 60; St. Louis & S. E. R. Co. *v.* Britz, 72 Ill., 256.

*Brakeman acting as Conductor—Brakeman.* Robinson *v.* Houston & T. C. R. Co., 46 Tex., 540.

*Car Coupler—Brakeman.* Whitman *v.* Wisconsin & M. R. Co., 12 Am. & Eng R. R. Cas., 214.

*Car Inspector—Brakeman.* Kidwell *v.* Houston & Gt. N. R. Co., 3 Woods (U. S. C. C.) 313; Smith *v.* Potter, 2 Am. & Eng. R. R. Cas., 140; Nashville &c. R. R. Co. *v.* Foster, 11 Am. & Eng. R. R. Cas., 180; Mackin *v.* Boston & Albany R. R. Co., 15 Am. & Eng. R. R. Cas., 196.

*Car repairer—Engineer.* Chicago & Alton R. R. *v.* Murphy, 53 Ill., 336.

*Conductor—Brakeman.* Wilson *v.* Madison &c. R. R. Co., 18 Ind. 226; Thayer *v.* St. Louis A. & T. H. R. R., 22 Ind., 26; Smith *v.* Potter, 2d Am. & Eng. R. R. Cas., 140; Dow *v.* Kansas Pac. R. R., 8 Kan., 642; Sherman *v.* Rochester & S. R. R., 17 N. Y., 153 (15 Barb., 574); Robinson *v.* Houston & T. C. R. R. Co., 46 Tex., 540.

*Conductor—Car Coupler.* Wilson *v.* Madison &c. R. R. Co., 18 Ind., 226.

*Conductor—Engineer.* Michigan Central R. R. Co. *v.* Dolan, 32 Mich., 510.

*Conductor—Fireman.* Slater *v.* Jewett, 5 Am. & Eng. R. R. Cas., 515.

*Conductor—Laborer on gravel train.* Ryan *v.* Cumberland Valley R. R., 23 Pa. St., 384; O'Connell *v.* Balt. & Ohio R. R., 20 Md., 212; Gillshannon *v.* Stony Brook R. R., 10 Cush. [Mass.], 228.

*Conductor—Laborer riding on train.* Howland *v.* Milwaukee &c. R. R. Co., 5 Am. & Eng. R. R. Cas., 378.

*Conductor—Laborer loading cars.* McGower *v.* St. Louis & Iron Mt. R. Co., 61 Mo., 528.

*Conductor—Laborer shoveling snow on track.* Jeffrey *v.* Keokuk &c. R. Co., 5 Am. & Eng. R. R. Cas., 568.

*Conductor—Surveyor riding on train.* Ross *v.* New York Central & H. R. R. Co., 64 N. Y., 617.

*Derrick, Laborer setting up—Brakeman on train.* Holden *v.* Fitchburg R. Co., 2 Am. & Eng. R. R. Cas., 94.

*Engineer—Brakeman.* Summerhays *v.* Kansas Pac. R. Co., 2 Cal., 484; Pitts., Ft. W. & C. R. Co. *v.* Devinney, 17 Ohio

St., 197; Same *v.* Lewis, 33 Ohio St., 196; Sherman *v.* Roch. & Syracuse R. Co., 17 N. Y., 153; Wright *v.* N. Y. Central R. R., 25 N. Y., 562; Ill. Cent. R. R. Co. *v.* Keen, 72 Ill., 512; Connor *v.* Chicago, R. I. & P. R. Co., 50 Mo., 285; Mobile & M. R. R. *v.* Smith, 59 Ala., 245; Moran *v.* N. Y. Cent. & H. R. R. Co. 67 Barb., 96; Houston & T. C. R. R. Co. *v.* Willie, 5 Am. & Eng. R. R. Cas., 541; Same *v.* Meyers, 8 Am. & Eng. R. R. Cas., 114; Pitts. &c. R. R. Co. *v.* Ranney, 5 Am. & Eng. R. R. Cas., 342; Nashville, C. & St. L. R. Co. *v.* Wheless, 15 Am. & Eng. R. R. Cas., 315.

*Engineer—Car repairer.* Valtez *v.* Ohio & Miss. R. R. Co., 85 Ill., 500.

*Engineer—Conductor.* Ragsdale *v.* Memphis & C. R. R. Co., 3 Baxt., 426.

*Engineer—Conductor claiming to be passenger.* Manville *v.* Cleveland & Toledo R. R. Co., 11 Ohio St., 417.

*Engineer—Fireman.* Alabama & Fla. R. R. Co. *v.* Waller, 48 Ala., 459; Murray *v.* So. Carolina R. R., 1 McMullen [S. Car.,] 385; Paulmier *v.* Erie R. R. Co., 5 Vroom (N. J.), 151.

*Engineer—Station Master.* Evans *v.* Atlantic & Pac. R. Co., 62 Mo., 49.

*Engineer—Switchman.* Smith *v.* Memphis & Louisville R. R. Co., 18 Fed. Rep., 304; Columbus, C. & I. R. R. Co. *v.* Troesch, 68 Ill., 545; 57 Id., 155.

*Fireman—Brakeman.* Greenwald *v.* Marquette, etc., R. R. Co., 8 Am. & Eng. R. R. Cas., 133.

*Fireman—Engineer on another train.* Bull *v.* Mobile & Montgomery Ry. Co., 67 Ala., 206.

*Foreman—Laborer.* Hofnagle *v.* N. Y. Cent. R. R., 55 N. Y., 608; Murphy *v.* Boston & A. R. R., 59 How. (N. Y.), Pr., 197; Hanrathy *v.* North. Cent. R. R., 46 Md., 280; Zeigler *v.* Day, 123 Mass., 152; Cumberland Coal & Iron Co., *v.* Scally, 27 Md., 589; Hogan *v.* Cent. Pac. R. Co., 49 Cal., 128.

*Foreman—Laborer on hand car.* Weger *v.* Penna. R. R., 55 Pa. St., 460.

*Foreman in Yard—Brakeman.* Rains *v.* St. L., I. Mt. & S. R. Co., 5 Am. & Eng. R. R., Cas. 610.

*Master Mechanic—Fireman.* Colum. & Ind. Cent. R. R. *v.* Arnold, 31 Ind., 174.

*Master Mechanic—Engineer.* Hough *v.* Railway Co., 100 U. S., 213.

*Section Foreman—Brakeman.* Lewis *v.* St. L., & I. Mt. R. R. Co., 59 Mo., 495; Hardy *v.* Carolina Cent. R. Co., 74 N. C., 734; 76 Id., 5.

*Section Foreman—Laborers.* L. & Nashville R. R. Co. *v.* Bowler, 9 Heisk. (Tenn.), 866.

[New York, Lake Erie & West. R. R. Co. v. Bell.]

*Section Foreman—Switchman.*   Hall *v.* Missouri Pacific R. Co.. 74 Mo., 298 ; Same *v.* Same, 8 Am. & Eng. R. R. Cas., 106.

*Yard Master—Brakeman.*   Besel *v.* N. Y. Cent. R. Co., 70 N. Y., 171.

*Yard Master—Laborer.*   Gravelle *v.* Minn. St. R. Co., 3 McCrary, 352.

The foregoing authorities seem to settle beyond question that the plaintiff and Pope and Vedder and O'Dea and all the men in the shops *were fellow-servants.*   Nor does the case of P. &. N. Y. C. & R. R. Co. *v.* Leslie (42 Leg. Int., 267.), deny this.

*James A. Lynes* and *E. L. Blakeslee* for defendant in error :— This court has decided the one engaged in running trains is not a fellow-servant with workmen in the machine shops, and this is in accordance with the weight of authority in the United States.

If this be true of one running a train a long distance, it would be true of one running a train a short distance.   Distance does not change the rule.   This rule declares Bell was not a fellow-servant with the workmen in the shops.   He was not brought in contact with them.   He was not required to step inside.   How was he a fellow-servant with *Vedder?*   Vedder was even more remote.   Vedder had duties in the shops in New York city and in Michigan, along the whole line.   Bell's work was on this local track in running its train.

Again, those engaged in repairing the track are not fellow-servants with those engaged in running the trains, according to the weight of authority in the United States.   So says Judge Thompson in 2d vol. Thompson on Negligence, 1038.

In Massachusetts it is held that the engine driver and the man whose duty it is to see that the locomotive engine is in proper order, do not bear such relation to each other as makes them co-employees in that sense which prevents the one from recovering against the company damages occasioned by the negligence of the other.

Ford *v.* Fitchburg R. R., 110 Mass., 200 ; 2 Rorer on Railroads, 1203, 1204, 1206, 1207; Rolling Mill *v.* Johnson, 114 Ill.; Pa. & N. Y. C. & R. Co. *v.* Leslie, 42 Leg. Int., 267.

Mr. Justice PAXSON delivered the opinion of the court, May 10th, 1886.

The main question in this case has been so often decided that an extended discussion of it becomes unnecessary.   It is sufficient to refer to Lehigh Valley Coal Co. *v.* Jones, 86 Pa. St. Rep., 432, where the rule is laid down as follows: " The question arises who are fellow servants in contemplation of

law? To constitute such they need not at the time be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes. The rule is the same, although the one injured may be inferior in grade, and is subject to the control and direction of the superior whose act caused the injury, provided they are both co-operating to effect the same common object. The true reason upon which I think the rule rests is, that each one who enters the service of another takes on himself all the ordinary risks of the employment in which he engages, and that the negligent acts of his fellow workmen in the general course of his employment are within the ordinary risks." A large number of authorities are then cited by our brother MERCUR, who delivered the opinion of the court, in support of his position, which we need not repeat. Indeed, I do not understand that the soundness of the rule was seriously questioned upon the trial below. It was in the application of the rule to the facts of the case that the learned judge fell into error. By the defendants' fifth point he was called upon to instruct the jury "that the men employed in the shops of the defendant, and the men employed in the shop yard, to take in and out cars loaded with supplies for use in the shops, and to load and unload them, all being under one common foreman, are fellow servants, and for the negligent acts of any one of them, not communicated to the general foreman, no recovery can be had." The learned judge answered this point as follows: "We decline to affirm this point. It calls upon us to say in substance, as respects the question here, and the acts under investigation, that Bell, O'Dea and Vedder were fellow servants and co-laborers, and that we decline to do."

The accident by which the plaintiff below was injured occurred in the shops of the defendant company. These shops are not all under one roof, but the foundry, hammer shop, and paint shop are separate from the general machine shop, which is about 700 feet long. Between the foundry and paint shop and machine shop, a track is laid for the purpose of bringing in materials and supplies to the various shops from the main track, and for carrying out the castings, cars, locomotives and repaired and manufactured articles upon the main track, for distribution over the road. All of these works and the men employed therein were under the general charge of one V. Blackburn, who was known as the Master Mechanic, and under him was a general foreman. The power of employing and discharging men was with the Master Mechanic. Each shop had its foreman, and under him were certain gang foremen who had charge of gangs of men engaged in the performance

of particular duties.  C. O. Vedder was gang foreman of the turning department, and had charge of making rods and links, and of gas and steam pipe and fitting.  M. H. Pope had charge as a boss of a gang of men whose business it was to bring in cars loaded with materials and supplies for the shops, from the main track, take them into the paint shop, foundry and other shops and unload them there, and to load any manufactured articles or supplies from the shops into cars for distribution along the road.  The plaintiff was employed on a car running into the shop for the purposes above stated.  In the year 1881 O. D. Falkenbury, who was foreman of the foundry, obtained permission of the Master Mechanic to run a gas pipe from the paint shop to the foundry.  This was done by O'Dea, one of the gas fitters, who carried the pipe across the track at an elevation of sixteen feet three inches above the rail.  This occurred on the 29th of June, and the same afternoon the plaintiff was struck by this pipe, when standing on the top of a car in passing under it, but was not injured.  The pipe was of such a height as not to hit a man seated on the cars, or when standing up if he stooped a little.  Pope, the foreman, was told of it and said he would see Hawthorne, the general foreman, about it, and the plaintiff says Pope told him it would be taken down.  This was not done, and the next day the plaintiff was again struck by the same pipe, and injured, for which injury this action was brought in the court below.

It is too plain for argument that the men engaged at work in these different shops, including the different foremen and gang bosses, were in the same common employment.  It is also equally clear that the plaintiff and the rest of the gang, who with him were running cars in and out of the shop to take in supplies, and to take out finished work, were in the same common employment.  The difference in rank or position makes no difference, as has been repeatedly held.  The gang laborer and the gang boss or foreman occupy precisely the same position.  It is only where the master or superior places the entire charge of his business, or a distinct branch of it, in the hands of an agent or subordinate, exercising no discretion or oversight of his own, that the master is held liable for the negligence of such agent or subordinate : Mullan v. The Steamship Co., 78 Pa. St. Rep., 25.  The latter must have a general power and control over the business, not a mere authority to superintend a certain class of work, or a certain gang of men, in order to make the master liable.  There was nothing of the kind here.  The accident was caused by the negligence of the workmen who put up the gas pipe.  If they had been ordered by the Master Mechanic to put up the pipe where and as it was placed, the negligence, if any, would have been the negli-

gence of the master, for which the defendants would have been responsible. Such was not the case. The most that can be urged was that the master consented, or to make it stronger, directed that a gas pipe should be carried from the paint shop to the foundry. If in doing so the men employed in putting it up did their work negligently, and a fellow workman was injured thereby, it was the negligence of men engaged in the same common employment; hence it was not the negligence of the master, and consequently not that of the company.

This view is not in conflict with the case of the Pennsylvania & New York Canal & R. R. Co. *v.* Leslie, 42 Leg. Int., 267. In that case Leslie and Mason were respectively engineer and fireman of a gravel train, and the negligence complained of was that of a boiler maker in a repair shop. It was held, under the circumstances of the case, that there was no connection between them; that the plaintiff had no more business in and about the company's machine shops, than if said shops had belonged to some other company or individual. This case was perhaps a close one, yet it differs essentially from the one in hand. Here the plaintiff was admittedly employed in and about the shops; his business was to take the material in and out as before stated.

We cannot affirm this case without extending the doctrine of *respondeat superior* to an unreasonable length.

Judgment reversed.